Hon. SAMUEL AMES, Chief Justice.
Hon. GEORGE A. BRAYTON, Associate Justice.

---

## Town of Tiverton v. Town of Fall River.

An order of removal of a pauper, made by the town council of a town, and executed in conformity to Ch. 51, section 13, of the Revised Statutes, if unappealed from, is conclusive, as to the settlement of the pauper upon the town to which he is removed.

A lunatic pauper placed, by the overseers of the poor of a town, in the Butler Asylum for the Insane, under Ch. 53, section 11, of the Revised Statutes, is there solely at the expense of the town thus placing him; and no recovery can be had for such expense of the town in which the pauper has his legal settlement, as can be when the pauper is committed to that institution by a justice of the peace, under the provisions of the first three sections of that chapter.

Assumpsit against the town treasurer of the town of Fall River, to recover the expenses of boarding one Edward B. Durfee,

at the Butler Hospital for the Insane, and which had been paid by the plaintiff town which had placed him there, upon the ground, that he was an insane pauper, settled in, and chargeable to, the defendant town.

The case was submitted to the court, under the general issue, upon the following agreed facts : that the said pauper was born in that part of the town of Tiverton now included in the town of Fall River, and upon a farm there, for many years owned by his mother, who, for more than thirty years, resided upon said farm ; that the pauper is about sixty-five years of age ; that Abraham Durfee, his father, was born in Tiverton, in that part of the town still embraced by the territory of Tiverton, and had a legal settlement there up to the time of his marriage, when he removed and cohabited with his wife some eight or ten years, on territory now forming a part of Fall River, during which period they had several children, including the pauper ; that the father then abandoned his family, and returned to, and resided in, that part of Tiverton which still remains the territory of that town, during the remainder of his life ; that the pauper lived in the Fall River part of the town until he attained manhood, and then went and learned the trade of a blacksmith, in Fall River, Massachusetts, where he resided some years, when he removed to, and resided in, Middleborough, Massachusetts, working at his trade for some years, and acquiring property and paying taxes there for two years ; that prior to 1844, and subsequent to his first insanity, the pauper returned to Fall River, Massachusetts, where he resided some eight years, during which time he improved, or received the rents of, the real estate which he inherited from his mother, who died about the year 1838 ; that about the year 1847, the pauper was found at large in the town of Tiverton, and was sent to the poor-house of that town, upon a complaint that he was an insane person, and that it was improper that he should be at large ; that he remained in the poor-house about one year, when he commenced living with his family in the present town of Tiverton, and continued to reside there and to improve his share of his mother's estate until early in 1852, when he sold his interest in that estate for the sum of $600, and then removed, with his family, to Rochester, Massachusetts, where, after residing for a

time, he became again insane, and was sent to the Insane Asylum in Taunton, Massachusetts; that after he was discharged therefrom, he was found at large in Tiverton, and on the first day of February, 1858, was taken up by the order of the overseer of the poor of said town, and, upon his complaint, the town council of Tiverton, having adjudged that the pauper had no legal settlement in that town, and that the town of Fall River was his last place of legal settlement, in this State, passed an order removing him to Fall River, in due form, which was duly executed, and a copy of the order and the pauper delivered to one of the overseers of said town; that no appeal was taken by the town of Fall River from this order, but that town, on the 10th day of February, 1858, ordered the pauper to be returned to Tiverton, and in pursuance of such order, the town sergeant of Fall River removed the pauper to Tiverton, and the overseers of the poor of that town refusing to receive the pauper, turned him out at large in said town; that the pauper was then taken by the overseer of the poor of Tiverton, as an insane person improper to be at large, and sent to the Butler Asylum for the Insane, at Providence, at which institution the town of Tiverton paid the expenses of the board and care of the pauper, which that town seeks to recover of the town of Fall River in this action. It was further agreed, that prior to the commencement of the action, demand of the claim had been made of the town of Fall River, in conformity with the statute.

*Sheffield, for the plaintiff.*

*Bradley, for the defendants.*

BRAYTON, J. It appears from the statement of facts, agreed upon by the parties, that on the first day of February, 1858, the town council of the town of Tiverton, in the county of Newport, upon complaint to them made by the overseer of the poor of said town, regularly adjudged, that the said town of Fall River was the last place of legal settlement, within this State, of the pauper, Edward B. Durfee, and ordered him to be removed thereto; that by virtue of said order, he was removed to said town of Fall River, and delivered to the overseer of the poor of said town, with an authentic copy of the order of removal; and that no appeal was taken from said order, by said town of Fall River. It does

not appear, from the statement of facts, that since said order, the pauper has gained any new settlement in said town of Tiverton. If this order is held to be conclusive upon the town of Fall River, as to the place of settlement of the pauper on the first day of February, 1858, then the plaintiffs claim that they are entitled to recover; but if the town is at liberty to impeach said order, and to submit evidence to show where the last place of settlement of the lunatic was on said first day of February, then the defendants claim that upon the statement of facts, he was not settled in Fall River, and that the plaintiffs have no right to recover.

By the provisions of Chap. 51, section 13, of the Revised Statutes, the town council is empowered, upon complaint of the overseer of the poor, to inquire "in what town the pauper was last legally settled, and to adjudge and determine to what town he belongs, and to order him to be removed thereto." The statute provides, that the town to which the removal is made, may, by the overseers, appeal from such order and adjudication, if aggrieved thereby. These provisions are the same in substance as those of the statutes 13 and 14, Charles II., ch. 12, where the order is made by two justices, and an appeal to the sessions is given to the parish to which the order is made. Indeed, the statute of Charles II. was in force here until 1748, when this power to remove was given to the town council, because that statute "was not so agreeable to the constitution of the government, as might be." Under that statute it was and is well settled, that an order of removal by two justices, unappealed from, is conclusive; and that no evidence can be given to impeach such order, or to show that the settlement of the pauper was, at the time of the order made, elsewhere than by such order is adjudged. See *Rex* v. *Inhabitants of Bakewell,* Burro. Sett. Cases, No. 60; *Rex* v. *Inhabitants of Woodchester,* Ib. No. 67; *Rex* v. *Inhabitants of Livington,* Ib. No. 96; *Rex* v. *Inhabitants of Silchester,* Ib. No. 176. In this last case, the paupers had been sent by an order, from the parish of Newberry to that of Enborn, by the names of George Wise and Jane his wife. Afterwards, the parish of Enborn ascertaining that the said Jane was not married, an order of removal was made, whereby she was removed, as a single woman, back to the parish whence she came. It was held,

that the first order was conclusive upon the parish of Enborn,—they not having appealed, and that the parish could not now question the fact that the pauper was married; and so clear was this to the court, that they declined to hear the counsel for Silchester, and said, that however this matter might be, if it were *res integra,* " yet it being fully settled, was a reason for them not to depart from it now ;" " for that *stare decisis* was a good rule, and never more so than in cases of the settlement of paupers." " If she were not his wife, it might have been controverted; but as they have neglected to appeal when they had a proper opportunity to show it, they are estopped to say so now."

This construction followed the statute when it came into use here, and continued when the statute was so altered as to make it more agreeable to the constitution of the government here. We think there has never been any question here upon this subject, more than in England; and we are of opinion that the order made by the town council of Tiverton, unappealed from, as it was, concludes the town of Fall River, and estops that town from denying that the settlement of the lunatic was, at the time of the order made, in the town of Fall River; and it appearing further, that no settlement has, since that time, been gained by the pauper elsewhere, his settlement must be held to be in that town.

It appears from the statement submitted by the parties, and agreed to by them, that the lunatic, the expenses of whose maintenance at the hospital is sought to be recovered in this suit, was committed to that institution by the overseers of the poor of the town of Tiverton, under the provisions of section 11, of Ch. 53, of the Revised Statutes,—" Of the restraint and cure of the insane,"—and not by a justice of the peace, under the provisions of the first three sections of that act. If committed by a justice of the peace under those provisions, the costs and expenses of the lunatic, if he has no property wherewith to pay them, is chargeable, in the first instance, to the town in which he was apprehended; to be recovered, however, by such town, of that in which the lunatic was last legally settled, when such settlement shall be ascertained. The liability is incurred, in such case, without any act of the town or of its overseers; and it is in such case only,

that a town is made liable for the support of a pauper not legally settled in such town.

The eleventh section authorizes the overseer of the poor of any town to place in the hospital insane persons chargeable to such town, if they are paupers. It gives, however, no authority to such overseer to remove to the hospital any lunatic settled in any other town. It makes no provision for the payment of the expenses of such lunatic. The expenses of such are put upon the same footing as those of lunatics placed there by a parent or guardian, or by relatives or friends, and are to be paid by the persons placing the lunatics there. If placed there by overseers of the poor, their act could only bind the town whose overseers they were, and not the town where the pauper was settled. In order to charge the town where the lunatic was settled, he must be removed thither; and if, instead of making such removal, a town will assume to incur any expenses for the pauper of another town, it must do it at its own proper charge, irrecoverable. The lunatic in this case was placed in the hospital without authority, and without the assent or request of the town of Fall River, where he was settled, and the expenses therefor, though paid by the town of Tiverton, are not recoverable.

Judgment must be for the defendant for costs.